NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK (CBN 149883)
Assistant United States Attorney
Chief, Asset Forfeiture Section
    312 North Spring Street, 14th Floor
    Los Angeles, California 90012
    Telephone:  (213) 894-6166
    Facsimile:  (213) 894-0142
    E-mail: Steven.Welk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          vs.<br><br>APPROXIMATELY 279,808 ALUMINUM STRUCTURES IN THE SHAPE OF PALLETS,<br><br>          Defendants.<br>――――――――――――――――――<br>PERFECTUS ALUMINUM, INC.,<br><br>          Claimant. | NO. CV 18-1023 DMG (SPx)<br><br>GOVERNMENT'S MEMORANDUM IN REPLY TO CLAIMANT'S OPPOSITION TO MOTION TO STRIKE CLAIM AND ENTER DEFAULT; DECLARATION OF AUSA STEVEN R. WELK |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. ii

I.    INTRODUCTION ........................................................................................1

II.   RELEVANT PROCEDURAL HISTORY AND STATUS OF THE
CLAIMANT/DEFENDANTS.......................................................................4

    A.    The Related Actions and *Liu* Indictment ............................................4

    B.    The Motions to Strike ........................................................................7

    C.    The Claimant/Defendants...................................................................9

          1.    *Doubleday* ................................................................................9

          2.    *Production* ..............................................................................10

          3.    *Perfectus* ...............................................................................10

          4.    *Scuderia* ................................................................................11

          5.    *Von Karman* ...........................................................................11

III.   ARGUMENT..............................................................................................11

    A.    Claimant/Defendants Fall Exactly Within the Scope of
Claimants That Congress Intended to Bar in Enacting the
Fugitive Disentitlement Doctrine.......................................................11

    B.    The Claims of Doubleday and Perfectus Are Also Properly
Stricken Based on Their Corporate Status ..........................................19

IV.   CONCLUSION..........................................................................................21

i

# TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE**

*Comm. For Idaho's High Desert, Inc. v. Yost,*
   92 F.3d 814 (9th Cir. 1996) ................................................................ 19

*Conforte v. Commissioner of Internal Revenue,*
   692 F.2d 587 (9th Cir. 1982) .............................................................. 13

*Degen v. United States,*
   517 U.S. 820 (1996) ..................................................................... 13-14

*J&J Sports Prod., Inc v. Humphries Enterprises, LLC,*
   715 F. Supp. 2d 71 (D.D.C. 2010) ..................................................... 20

*Moofly Prods., LLC v. Favila,*
   2013 WL 12114416 (C.D. Cal Nov. 25, 2013) ................................... 20

*Sierra Ass'n for Environment v. F.E.R.C.,*
   744 F.2d 661 (9th Cir. 1984) .............................................................. 19

*Smith v. United States,*
   94 U.S. 97 L.Ed. 32 (1876) ............................................................... 13

*Southern California Darts Ass'n v. Zaffina,*
   762 F.3d 921 (9th Cir. 2014) .............................................................. 19

*United States v. $6,190 in U.S. Currency,*
   581 F.3d 881 (9th Cir. 2009) .............................................................. 17

*United States v. $6,976,934.65 Plus Interest,*
   478 F. Supp. 2d 30 (D.D.C. 2007) ............................... 12, 13, 14, 15

*United States v. $6,976,934.65 Plus Interest,*
   554 F.3d 123 (D.C. Cir. 2009) ........................................................... 14

*United States v. All Asset Listed in Attachment A,*
   89 F. Supp. 3d 813 (E.D. Va. 2015) .................................................. 16

*United States v. Any & All Funds on Deposit . . . at HSBC PLC,*
   87 F. Supp. 3d 163 (D.D.C. 2015) ............................................... 16, 17

*United States v. Real Property . . . Tulsa, Oklahoma,*
   185 F. Supp. 3d 1288 (N.D. Okla. 2016) ........................................... 16

ii

*United States v. Technodyne*,
     753 F.3d 368 (2d Cir. 2014) ............................................................... 18

**FEDERAL STATUTES**

28 U.S.C. § 2466 ........................................................... *passim*

28 U.S.C. § 2466(a) ........................................................ *passim*

28 U.S.C. § 2466(b) ........................................................ *passim*

**STATE CASES**

*Cadle Co. v. World Wide Hospitality Furniture, Inc.*,
     144 Cal. App. 4th 504 (2006) ........................................................ 20

**STATE STATUTES**

*California Revenue & Tax Code § 23301* ................................................ 9

## I.    INTRODUCTION

The government hereby replies to the opposition of Claimant/defendants to the government's motions to strike claims and enter default.  For the reasons set out in the government's original moving papers and this consolidated reply, the motions should be granted.

The instant action is one of five related civil forfeiture actions (the "Related Actions") that arise from the same general universe of facts.[1]  There is a single corporate claimant in each of the Related Actions, and each of those corporate claimants is also a named defendant in a related criminal prosecution entitled *United States v. Liu, et al.*, CR 19-282 RGK ("*Liu*").  Each of the claimant/defendants has refused to appear in *Liu*, and is currently subject to a standing civil contempt order issued by the Honorable Judge R. Gary Klausner, the Judge before whom *Liu* is pending.[2]  The sanctions currently owed collectively by the claimant/defendants pursuant to the two Contempt Orders, through November 27, 2019, total $356,000.00.  By the date of the hearing on these motions, the

---

[1] The five Related Actions are: *United States v. Real Property Located at 1001 S. Doubleday Avenue, Ontario, California*, EDCV 17-1873 DMG (SPx) (Claimant – 1001 Doubleday, LLC ("Doubleday"));  *United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets*, CV 18-1023 DMG (SPx) (Claimant - Perfectus Aluminum, Inc. ("Perfectus")); *United States v. Real Property Located at 10681 Production Avenue, Fontana, California*, EDCV 17-1872 DMG (SPx) (Claimant – 10681 Production Avenue, LLC ("Production")); *United States v. Real Property Located at 14600 Innovation Drive, Riverside, California*, EDCV 17-1875 DMG (SPx) (Claimant – Scuderia Development, LLC ("Scuderia")); and *United States v. Real Property Located at 2323 Main Street, Irvine, California*, SACV 17-1592 DMG (SPx) (Claimant – Von Karman-Main Street, LLC ("Von Karman")).

[2]  There are two such orders, the first entered against Perfectus and Scuderia on September 19, 2019, and the second entered against Doubleday, Production and Von Karman on October 7, 2019.  *See* exhibits D and E to the Declaration of AUSA Steven R. Welk ("Welk Decl.").

1

cumulative total, which is currently accruing at the rate of $20,000 per day ($4,000 per day for each of the five claimant/defendants), will increase by $320,000.00, for a total of $676,000.00. Notwithstanding these facts, each claimant/defendant asserts that it is "entitled to file a claim to the defendant property" and "defend [itself] against" the forfeiture of that property in *this* Court, despite clear federal law – and basic common sense – that compels the opposite conclusion.

In the interests of brevity and clarity, the government files this consolidated reply in all five of the Related Actions, identical except for the captions.[3] In each of the five motions to strike, the government relied upon one or more of three separate bases: first, that the corporate claimant/defendant was barred from proceeding in the action because it was suspended or forfeited by the California Secretary of State, and was therefore ineligible to litigate in this Court (an argument that still applies to claimant/defendants Doubleday and Perfectus); second, that each claimant/defendant was ineligible to litigate in this Court because it was not adequately represented by counsel (an argument that now appears to be moot, as each of the claimant/defendants is now represented by counsel who acknowledges his or her status as such); and third, that despite having subjected itself to the jurisdiction of this Court by appearing in one of the Related Actions, each claimant/defendant's simultaneous refusal to submit to the jurisdiction of Judge Klausner in *Liu* – even in the face of Judge Klausner's entry of civil contempt orders resulting in hundreds of thousands of dollars in sanctions against it – justifies the striking of the claims of the claimant/defendants pursuant to the fugitive disentitlement doctrine articulated in 28 U.S.C. § 2466, which bars

---

[3] References in this consolidated reply to the record in the respective Related Actions are set out mostly in footnotes, with each action identified by the abbreviated name of the claimant/defendant in that action, followed by the docket number and page number of the document being referenced. For example, the opposition brief filed by Doubleday in CV 17-1873 would be referenced as "Doubleday DN 51-1," followed by a page reference, as appropriate.

fugitives from defending against civil judicial forfeiture claims while simultaneously refusing to submit to the jurisdiction of a court in which they have been charged criminally for related conduct.

As explained below, there are specific, material facts relevant to the government's motions that are undisputed by the claimant/defendants, or not reasonably subject to dispute.  For example, one of the five (Doubleday) is a Delaware corporation that remains in forfeited status in California as of November 27, 2019.  *See* exhibit A to the Welk Decl.  Another of the five (Perfectus) is a California corporation that, as of November 27, 2019, is in "SOS Suspended" status.  *See* exhibit B to the Welk Decl.  All five of the claimant/defendants have been adjudged by Judge Klausner to be in contempt of court for knowingly and willingly evading his jurisdiction in *Liu* and refusing to appear to answer the charges brought against them in the *Liu* Indictment.  *See* exhibits C, D and E to the Welk Decl.  Notably, the claimant/defendants do not deny that they are defendants in *Liu* or that they are subject to either the September 19 Contempt Order or the October 7 Contempt Order.  None of the claimant/defendants has challenged the Contempt Orders against it.

In addition, each of the four claimant/defendants in the real property cases (that is, all except Perfectus) are in default on the property taxes owed on the defendant properties for tax years 2017 and 2018, in the total amount of $4,813,739.40.  *See* exhibits F, H, J and L to the Welk Decl.[4]  What these figures demonstrate is that the claimant/defendants stopped paying the property taxes on the defendant real properties upon the commencement of the Related Actions.  In short, since at least 2017, and continuing through the present date, the

---

[4]  An additional $2,235,685.54, attributable to property taxes on the four defendant real properties for tax year 2019 will be delinquent if not paid by December 10, 2019, three days before the hearing on these motions.  *See* exhibits G, I, K and M to the Welk Decl.

3

claimant/defendants have engaged – and continue to engage - in a lengthy and continuous effort to exploit every possible benefit of their corporate status, while simultaneously avoiding all of the resulting legal obligations.  The government has reason to believe that at least some of the defendant real properties are being rented by the claimant/defendant, and that claimant/defendants are collecting rent, generating substantial income while their refusal to pay property taxes chips away at the equity of the properties.

In their opposition briefs, the claimant/defendants are reduced to wordsmithing, seeking to graft a limitation onto the plain language of the statutory fugitive disentitlement doctrine (28 U.S.C. § 2466(b)) that simply is not there, and which, if adopted by this Court, would have the effect of eviscerating the doctrine. As explained below, their argument rests upon an unjustified, restrictive reading of the plain language of § 2466(b), and misconstrues the judicial authority relied upon in support of their argument.

## II.    RELEVANT PROCEDURAL HISTORY AND STATUS OF THE CLAIMANT/DEFENDANTS

### A.    The Related Actions and *Liu* Indictment

The Related Actions were commenced on September 14, 2017 (Doubleday, Production, Scuderia and Von Karman) and February 7, 2018 (Perfectus).[5]  The respective claimant/defendants filed their claims on October 3, 2017 (Production), October 18, 2017 (Doubleday, Scuderia and Von Karman), and March 16, 2018 (Perfectus).[6]  No other claims were filed in any of the Related Actions.  The Court ordered the actions stayed on February 26, 2018 (Doubleday, Production, Scuderia

---

[5]  Doubleday DN 1; Perfectus DN 1; Production DN 1; Scuderia DN 1; and Von Karman DN 1.

[6]  Doubleday DN 13; Perfectus DN 18; Production DN 13; Scuderia DN 12; and Von Karman DN 13.

4

and Von Karman) and April 10, 2018 (Perfectus) pursuant to stipulations of the parties, due to what was, at the time, an ongoing criminal investigation of the conduct described in the complaints.[7]

The *Liu* Indictment, which named each of the claimant/defendants as a defendant, was filed under seal on May 7, 2019, and was unsealed on July 30, 2019. The government thereafter served a *Liu* summons on each of the claimant/defendants, each of which failed to appear for its initial appearance. The government sought relief from Judge Klausner for that failure and, on September 12, 2019, Judge Klausner found that claimant/defendants Perfectus and Scuderia were in contempt of court. *See* Welk Decl., exhibit C.

Judge Klausner issued a further order in *Liu* on September 19, 2019 (the "September 19 Contempt Order"), in which he found that Perfectus and Scuderia (a) were properly served with summonses to appear; (b) failed to appear for their initial appearance; (c) were thereafter ordered to show cause why they should not be adjudged in contempt; (d) failed to either respond to the order to show cause or appear for the hearing on said order; (e) that the government had shown by clear and convincing evidence that Perfectus and Scuderia had violated a court order by failing to appear; and (f) ordering civil contempt sanctions against Perfectus and Scuderia, which would begin to accrue on September 21, 2019, and would increase every day until said claimant/defendants "schedule[d] and appear[ed] before the Court for arraignment on the Indictment." *See* Welk Decl., exhibit D.

The September 19 Contempt Order provided for initial sanctions of $2,000 per day against each of Perfectus and Scuderia, beginning two days after entry of the Order (or September 21, 2019), and increasing to $4,000 per day beginning four weeks after the initial accrual date. Four weeks from September 21, 2019 was October 19, 2019. Neither Perfectus nor Scuderia has scheduled or appeared for

---

[7] Doubleday DN 24; Perfectus DN 23; Production DN 32; Scuderia DN 23; and Von Karman DN 24.

arraignment in *Liu*.  Welk Decl., ¶6.  As of November 27, 2019, the sanctions due under the September 19 Contempt Order against *each* of Perfectus and Scuderia total $216,000.00 ($2,000 per day from September 21 to October 19, and $4,000 per day from October 19 through November 27), for a cumulative total of $432,000.00.  *Id.*  The September 19 Contempt Order further provides that the government may petition the Court for interim judgments reflecting accrued sanctions, and "to increase the daily contempt sanction for each defendant if the fine ordered is not sufficiently coercive to obtain defendants' compliance with their obligations to schedule and appear for their arraignments on the Indictment."  *Id.*

On October 7, 2019, Judge Klausner entered an Order in *Liu* (the "October 7 Contempt Order"), in which he found that the remaining claimant/defendants (Doubleday, Von Karman and Production) (a) were properly served with summonses to appear; (b) failed to appear for their initial appearance; (c) were thereafter ordered to show cause why they should not be adjudged in contempt; (d) failed to either respond to the order to show cause or appear for the hearing on said order; (e) that the government had shown by clear and convincing evidence that Doubleday, Von Karman and Production had violated a court order by failing to appear; and (f) ordering civil contempt sanctions against Doubleday, Von Karman and Production, which began to accrue on October 9, 2019, and would increase every day until said claimant/defendants "schedule[d] and appear[ed] before the Court for arraignment on the Indictment."  Welk Decl., exhibit E.

Like the September 19 Contempt Order against Perfectus and Scuderia, the October 7 Contempt Order provided for initial sanctions of $2,000 per day, per defendant, beginning two days after entry of the Order (or October 9, 2019), and increasing to $4,000 per day beginning four weeks after the initial accrual date.  *Id.* Four weeks from October 9, 2019 was November 6, 2019.  Neither Doubleday, Von Karman nor Production has scheduled or appeared for arraignment in *Liu*. Welk Decl, ¶8.  As of the date of this filing, the sanctions currently due under the

October 7 Contempt Order against each of Doubleday, Von Karman and Production total $140,000.00 ($2,000 per day from October 9 to November 6, and $4,000 per day from November 6 through November 27), for a cumulative total of $420,000.00.  *Id.*  The October 7 Contempt Order also provides that the government may petition the Court for interim judgments reflecting accrued sanctions, and to "increase the daily contempt sanction for each defendant if the fine ordered is not sufficiently coercive to obtain defendants' compliance with their obligations to schedule and appear for their arraignments on the Indictment."  *Id.*

## B.   The Motions to Strike

The government filed its motions to strike in the Related Actions on September 16, 2019, setting them for hearing on October 18, 2019.[8]  The opposition papers of the claimant/defendants to the motions to strike were due on September 27, 2019.  Instead of filing opposition papers, however, each of the claimant/defendants filed an *ex parte* application seeking a 90-day continuance of the hearing on the government's motion, arguing that it needed the additional time to "determine its legal representation and scope thereof" and/or "address its deficiencies in corporate legal status."[9]

In the declarations offered in support of the applications, Mr. Greenberg (who was counsel for all of the claimant/defendants at the time, but is now counsel only for Perfectus), stated that he was "unaware of any urgency with respect to the properties at issue," and argued that the government was therefore not prejudiced

---

[8]  Doubleday DN 38; Perfectus DN 40; Production DN 46; Scuderia DN 37; and Von Karman DN 38.

[9]  Doubleday DN 42, at 6; Perfectus DN 45, at 6; Production DN 50, at 6; Scuderia DN 41, at 6; and Von Karman DN 42, at 6.

by the requested delay,[10] ignoring by omission the fact that the claimant/defendants had already incurred millions of dollars in unpaid property taxes on the defendant real properties for tax years 2017 and 2018 that, by their nature, constitute debts secured by the defendant real properties on which the property taxes are due, and which therefore have an ongoing and cumulative depressive effect on the amount of equity in the properties.

The government opposed the applications for continuance on September 30, 2019, noting, among other things, the entry of the September 19 Contempt Order in *Liu* (the October 7 Contempt Order had yet to be entered), and the fact that two of the claimant/defendants had already been adjudged to be in contempt of court by another Judge in this district.[11]

On October 2, 2019, this Court partially granted the applications of the claimant/defendants for a continuance of the hearings, extending their opposition date to November 22, 2019, and continuing the hearing date to December 13, 2019.[12]   Claimant/defendants filed their opposition briefs on November 22, 2019.[13]

/ / /

/ / /

/ / /

---

[10] Doubleday DN 42, at 9; Perfectus DN 45, at 9; Production DN 50, at 9; Scuderia DN 41, at 9; and Von Karman DN 42, at 9.  The property tax defaults for each of the defendant real properties are described with particularity below.

[11] Doubleday DN 43; Perfectus DN 46; Production DN 51; Scuderia DN 42; and Von Karman DN 43.

[12]  Doubleday DN 44; Perfectus DN 47; Production DN 52; Scuderia DN43; and Von Karman DN 44.

[13]  Doubleday DN 51-1 (amended opposition filed on November 23); Perfectus DN 49; Production DN 56; Scuderia DN 47; and Von Karman DN 49.

8

### C.   The Claimant/Defendants

#### 1.   *Doubleday*

As demonstrated by its submission in opposition to the motion to strike, Doubleday is a Delaware corporation that, at one time, was registered with the California Secretary of State as a foreign corporation.  However, as the government demonstrated in its moving papers, Doubleday's California corporate status as of September 16, 2019 was "FTB Forfeited," meaning that its corporate powers, rights and privileges were suspended.  *See Cal. Rev. & Tax Code* § 23301. Moreover, despite Doubleday's representation in its September 27, 2019 application for a continuance that it needed the additional time to "address its deficiencies in corporate legal status," it has failed to do so.  As of November 27, 2019, Doubleday's status remains "FTB Forfeited."  Welk Decl., exhibit A. Doubleday's only effort to address this issue in its opposition papers is found at Doubleday DN 51-1 at page 5, where it states "on information and belief, Doubleday is currently in the process of reviving its foreign corporation status with California's Secretary of State," a belief apparently held by one of Doubleday's attorneys, Ms. Potashner.   Given the assurances made in the September application for additional time – *i.e.*, that Doubleday wanted the continuance so that it could "address its deficiencies in its corporate legal status" – this ambiguous statement by one of Doubleday's attorneys that Doubleday *might* be doing something to revive its forfeited status is dubious at best.  There is no explanation of what steps have been taken in that regard.

More importantly, as discussed above, Doubleday is one of the claimant/defendants adjudged to be in contempt of court in the October 7 Contempt Order, under which it has incurred $140,000.00 in sanctions as of November 27, 2019, a number that increases by $4,000 every day.  As is true of all of the claimant/defendants, Doubleday's opposition papers provide neither an explanation for its continued refusal to appear in *Liu*, a representation that it ever

9

intends to make such an appearance, or a representation that it has any intention of paying the sanctions that continue to accrue.  It has made no effort to schedule an initial appearance in the criminal case in which it is a defendant.  Welk Decl., ¶ 8.

Finally, Doubleday, the title holder of the defendant real property in case number 17-1873, is in default on $954,726.09 in property taxes for tax years 2017 and 2018 – a figure that, like the sanctions imposed by the October 7 Contempt Order, continues to grow, albeit at a lesser rate.  Welk Decl., exhibit F.

### 2.   Production

Production is one of the claimant/defendants adjudged to be in contempt of court in the October 7 Contempt Order, under which it has incurred $140,000.00 in sanctions as of November 27, 2019, a number that increases by $4,000 every day.  It has made no effort to schedule an initial appearance in the criminal case in which it is a defendant.  Welk Decl., ¶ 8.

Finally, Production, the title holder of the defendant real property in case number 17-1872, is in default on $1,900,859.95 in property taxes for tax years 2017 and 2018, a figure that, like the sanctions imposed by the October 7 Contempt Order, continues to grow, albeit at a lesser rate.  Welk Decl., exhibit H.

### 3.   Perfectus

Perfectus is a California corporation that was in suspended status with the California Secretary of State as of September 16, 2019.  According to a document submitted to the Court with its opposition papers (Perfectus DN 50 at 11), Perfectus was active (that is, not suspended) as of November 18, 2019.  However, as of November 27, 2019, Perfectus is now "SOS Suspended."  *See* Welk Decl., exhibit B.

Perfectus is also one of the claimant/defendants adjudged to be in contempt of court in the September 19 Contempt Order, under which it has incurred $216,000.00 in sanctions as of November 27, 2019, a number that increases by

$4,000 every day.  Welk Decl., exhibit D.  It has made no effort to schedule an initial appearance in the criminal case in which it is a defendant.  Welk Decl., ¶ 6.

### 4.    *Scuderia*

Scuderia is one of the claimant/defendants adjudged to be in contempt of court in the September 19 Contempt Order, under which it has incurred $216,000.00 in sanctions as of November 27, 2019, a number that increases by $4,000 every day.  *Id*.  It has made no effort to schedule an initial appearance in the criminal case in which it is a defendant.  Welk Decl., ¶ 6.

Scuderia is also the title holder of the defendant real property in case number 17-1875, and is in default on $1,415,177.43 in property taxes for tax years 2017 and 2018, a figure that, like the sanctions imposed by the October 7 Contempt Order, continues to grow, albeit at a lesser rate.  Welk Decl., exhibit L.

### 5.    *Von Karman*

Von Karman is one of the claimant/defendants adjudged to be in contempt of court in the October 7 Contempt Order, under which it has incurred $140,000.00 in sanctions as of November 27, 2019, a number that increases by $4,000 every day.  It has made no effort to schedule an initial appearance in the criminal case in which it is a defendant.  Welk Decl., ¶ 8.

Von Karman is also the title holder of the defendant real property in case number 17-1592, and is in default on $542,975.93 in property taxes for tax years 2017 and 2018, a figure that, like the sanctions imposed by the October 7 Contempt Order, continues to grow, albeit at a lesser rate.  Welk Decl., exhibit J.

## III.    ARGUMENT

### A.    Claimant/Defendants Fall Exactly Within the Scope of Claimants That Congress Intended to Bar in Enacting the Fugitive Disentitlement Doctrine

Each of the claimant/defendants makes the same baseless argument in its opposition to the government's motion to dismiss – namely, that the fugitive

disentitlement doctrine of § 2466 does not apply to a corporate claimant/defendant "unless its majority shareholder or the individual asserting claims on behalf of the corporation is a fugitive."[14]  This statement is wrong, as it misstates the plain language of the statute.

Section 2466(b) provides: "Subsection (a) [granting a district court discretion to bar a fugitive from defending against a civil judicial forfeiture while in fugitive status] may be applied to a claim filed by corporation if any majority shareholder, or individual filing the claim on behalf of the corporation is a person to whom subsection (a) applies."  Subsection (b) does *not* say that fugitive disentitlement *only* applies where one or the other of those conditions is true.  Nor does it say – as claimant/defendants have attempted to paraphrase it – that the doctrine does not apply *unless* one or the other condition is true.  The statute merely states that where one or the other *is* true, the district court's authority to impose disentitlement extends to the claimant/defendant corporation.  The plain language of the statute is permissive, not exclusionary.

Claimant/defendants cannot cite a single case for the proposition that a corporation is subject to the fugitive disentitlement doctrine *only* where its majority shareholder of individual filing the claim on behalf of the corporation is not only also a defendant, but a fugitive, because there are no such cases.  What they have cited are cases that support the proposition that where a majority shareholder of a corporate claimant is a fugitive within the meaning of §2466(a), that corporate claimant may be subject to disentitled as a result.  Claimant/defendants rely heavily on *United States v. $6,976,934.65 Plus Interest*, 478 F. Supp. 2d 30 (D.D.C. 2007) ("*Soulbury Limited*"), in which the court had before it a corporate civil forfeiture claimant (Soulbury Limited) that the government alleged was a shell corporation that was the alter ego of an indicted natural person (Scott), who ran a network of

---

[14]  *See* Doubleday DN 51-1, at 6; Perfectus DN 49, at 6; Production DN 56, at 6; Scuderia DN 47, at 6; and Von Karman DN 49, at 6.

illegal off-shore gambling internet sites.  478 F. Supp. 2d at 34.  The civil

forfeiture case was filed in 2003.  Soulbury Limited filed a claim and answer.

Scott did not.  The case was thereafter stayed, presumably because there was an

ongoing investigation concerning the underlying conduct (although the reason for

the stay is unstated in the opinion).  *Id.*  In 2005, Soulbury Limited, Scott and

another individual were indicted in the District of Columbia on charges arising

from the same basic facts alleged in the civil forfeiture case.  *Id.*  The government

sought to strike Soulbury Limited's claim and answer in the forfeiture case

pursuant to § 2466, arguing that, as Scott's alter ego, Soulbury's claim should be

stricken under § 2466(a) based on Scott's fugitive status under §2466(a).

The Court began its analysis with a review of the history of the fugitive

disentitlement doctrine, tracing it from its origins in common law.  The court noted

that the doctrine had been endorsed by the Supreme Court as early as 1876 (*id.* at

35 (citing *Smith v. United States*, 94 U.S. 97, 24 L.Ed. 32 (1876)), and "rested on

the ground that a fugitive should not be able to exploit judicial processes to his

advantage in one matter while scoffing at them in another."  *Id.*  Over time, courts,

including the Ninth Circuit, expanded the application of the doctrine to civil cases,

having concluded that it "'should apply with greater force in civil cases where an

individual's liberty is not at stake.'"  *Conforte v. Commissioner of Internal*

*Revenue*, 692 F.2d 587, 590 (9th Circuit 1982).

"By the mid-1990's, courts routinely held that a fugitive in a criminal case

could not avail himself of the court to contest a civil forfeiture action directed

against his property."  *Soulbury Limited*, 478 F. Supp. 2d at 35 (internal quotes and

citation omitted).  In 1996, however, the Supreme Court addressed the propriety of

applying the doctrine in civil forfeiture cases, and concluded that the underlying

basis for courts' use of the doctrine – "the inherent authority [of district courts] to

protect their proceedings and judgments" – was insufficient to justify the

imposition of the "harsh sanction of absolute disentitlement."  *Degen v. United*

13

*States*, 517 U.S. 820, 827 (1996).  In response to *Degen*, Congress enacted what is now § 2466(a) in 2000, and amended it to add subsection (b) a year later, reviving the doctrine and the consistent pre-*Degen* authority.  *Soulbury Limited*, 478 F. Supp. 2d, at 37.  The government's argument in *Soulbury Limited* was that fugitive disentitlement should be applied to the corporate claimant in the civil forfeiture case not because *Soulbury Limited* was both a criminal defendant and civil forfeiture claimant, but because it was controlled by, and was the alter ego of, Scott, who was a fugitive.  The heart of the government's argument was that §2466(b) made it unnecessary for the government to show that *Soulbury Limited* was a fugitive (even though it appears it may have been) because Scott was its majority shareholder and a fugitive under §2466(a).  *Id.* at 38-39 ("The government has asserted that William Scott is the person to whom § 2466(a) applies, and that his disentitlement can be extended to Soulbury under § 2466(b).").  Because the issue was framed in this way, the court, in applying the five elements of § 2466(a), focused entirely on Scott, not Soulbury.  Only after having concluded that the conditions for application of the doctrine were satisfied *as to Scott* did the court turn to § 2466(b), immediately concluding that there was insufficient evidence in the record before it to determine whether Scott was, in fact, the majority shareholder of Soulbury Limited.  *Id.* at 42.[15]

The *Soulbury Limited* court looked to the legislative history of §2466, having concluded that Congress' use of the words "any majority shareholder" in

---

[15]  The district court is *Soulbury Limited* did eventually conclude that fugitive disentitlement should be applied to the corporate claimant after further proceedings, finding that the doctrine was applicable to Scott and therefore also applicable to Soulbury Limited as his alter ego.  *United States v. $6,976,934.65 Plus Interest*, 554 F.3d 123 (D.C. Cir. 2009).   The district court's grant of summary judgment in the government's favor was reversed, however, and the case remanded for further proceedings into whether the elements for application of the doctrine applied to *Scott*.  Subsection (b) was mentioned only in passing in the 2009 opinion, and did not figure into the appellate court's analysis.

14

subsection (b) rendered the provision ambiguous.  After that review, however, the court found it "particularly telling that it says the amendment [that is, subsection (b)] 'clarifies' that a fugitive may not avoid disentitlement 'by filing, or having another person file, a claim on behalf of a corporation that the fugitive controls.' *The item recognizes that § 2466, as previously enacted, was not limited to disentitlement of natural persons.*"  *Id.* at 43 (emphasis added).  The court went on to hold that the "operative provision of § 2466(a), unchanged by the addition of subsection (b)," allows a court to disallow the use of the courts in furtherance of a civil forfeiture claim by a defendant in a related criminal case.  *Id.*  "Whatever subsection (b) means, it appears to have been intended to clarify the fact that fugitive disentitlement could apply to a corporate entity. . . .  All that subsection (b) appears to add is a presumption that a fugitive's disentitlement will be imputed to a corporation of which he is a majority shareholder or on behalf of whom he files a claim."  *Id.*

In discussing the intended application of the sanction of § 2466(a), the *Soulbury Limited* court recognized that the focus of the disentitlement inquiry was not properly on the relationship between or among various different fugitives in a given case, but on the fugitive status of the "person [who was attempting to use] the resources of the courts of the United States in furtherance of a claim  in any related civil forfeiture action."  § 2466(a).  Where that "person" – natural or corporate, subsection (a) makes no distinction – is subject to criminal process of which it has notice, in a case related to a pending civil forfeiture action in which it has appeared, and evades the jurisdiction of the court in which the charges have been brought, without being confined or otherwise unable to appear in response to the criminal charges, that "person" is subject to the fugitive disentitlement doctrine.  Subsection (b) expands the authority of subsection (a) to encompass a scenario where a fugitive natural person uses a corporate entity to advance a civil forfeiture claim while evading the criminal court's jurisdiction.

The other authorities relied upon by claimant/defendants are similarly unhelpful to them.  They dismiss the government's reliance on *United States v. All Asset Listed in Attachment A*, 89 F. Supp. 3d 813 (E.D. Va. 2015), on the ground that in that case, "the individual defendant filing claims in the forfeiture proceeding on behalf of various corporations was determined to be a 'fugitive' under § 2466(a) and was the majority shareholder of those corporate claimants."  *See, e.g*, Production DN 56, at 7.  This observation actually bolsters the government's argument that § 2466(b) merely expands the scope of subsection (a), and serves the purpose of bringing corporate defendants within the reach of the doctrine solely because a co-defendant who is a natural person is also a majority shareholder, obviating the need to engage in the 5-factor analysis of § 2466(a) against the corporate defendant.  Rather than apply the individualized analysis to the corporate claimant/defendants the *All Assets* court used § 2466(b) to summarily dispose of their claims in three sentences.  *Id.* at 828.  The court in *United States v. Real Property . . . Tulsa, Oklahoma*, 185 F. Supp. 3d 1288 (N.D. Okla. 2016) followed the same path under similar circumstances, disposing of the claims of the corporate claimant in a footnote.  *Id.* at 1290 n.1.

Claimant/defendants also rely upon what they characterize as the "far more pertinent analysis" of the court in *United States v. Any & All Funds on Deposit . . . at HSBC PLC*, 87 F. Supp. 3d 163 (D.D.C. 2015), but that case has nothing in common with the Related Actions.  *Any & All Funds* involved a civil forfeiture claimant who was a natural person (Siriwan), and had also been federally indicted.  The opinion contains no mention of either corporate claimants (in the forfeiture case) or defendants (in the criminal case).  The sole issue concerning disentitlement was whether Siriwan was subject to disentitlement under the 5-factor analysis of § 2466(a).  *Id.* at 167.  The court concluded that she was not, because she had never lived in the United States, was absent from the United States when the indictment was issued, and had not "disregarded the indictment" against

16

her, having successfully sought the permission of the court in the criminal case to specially appear for the purpose of advancing certain arguments.  The claimant/defendants here have nothing in common with Siriwan.  They are domestic American corporate entities (two organized in Delaware, and three in California); and they have been adjudged to have received proper notice of the criminal charges against them and nevertheless refused to appear, disregarding the indictment despite substantial penalties imposed by the Contempt Orders.  For the reasons discussed above, whether the 5-element analysis of § 2466(a) applies to their respective majority shareholders is entirely irrelevant, as the application of the disentitlement doctrine to a corporate claimant/defendant does not depend upon the fugitive status of the claimant/defendant's majority shareholder, and nothing in *Any & All Funds* suggests otherwise.

Simply put, subsection (b) of § 2466 is not – as claimant/defendants argue – a provision that *limits* the reach of § 2466(a), but one that *expands* it, giving the court authority to extend the disentitlement doctrine to corporations behind which a fugitive who is a natural person attempts to hide.  There is nothing in the language of § 2466 or any of the authority applying the disentitlement doctrine in the civil forfeiture context to suggest that in enacting § 2466(b), Congress intended to provide a safe harbor that would allow a criminally indicted corporation to thumb its nose at a criminal court while simultaneously defending against the civil forfeiture of its property in a different room of the same courthouse (or, as here, a courtroom a few blocks away).[16]  The absurdity of claimant/defendants' position is obvious when one considers what would happen if all of the Related Actions were

---

[16]  Indeed, a further indiscretion of the expansiveness of § 2466 is that its application is not limited to situations where the related criminal prosecution and civil forfeiture proceedings are before the same judge, or even in the same court. The Ninth Circuit has held that the doctrine extends to civil forfeiture claimants in federal court who are fugitives from state or federal criminal proceedings.  *United States v. $6,190 in U.S. Currency*, 581 F.3d 881 (9th Cir. 2009).

before the same judge, with the court imposing substantial sanctions on the fugitive corporations for their failure to appear, and then inviting counsel for those same parties to step to the lectern and press his or her arguments in defense of the government's related civil forfeiture effort.

Nor would such a result advance the obvious goals of § 2466, which was designed to prevent the unseemly "spectacle" recognized in *Degen* of a "criminal defendant who, facing both incarceration and forfeiture for his misdeeds, attempts to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him the return of alleged criminal proceeds while carefully shielding himself from the possibility of a penal sanction." *United States v. Technodyne*, 753 F.3d 368, 377 (2d Cir. 2014).

That the elements of the fugitive disentitlement doctrine have been demonstrated here with respect to the claimant/defendants is not reasonably subject to dispute. Each of them is a named defendant in *Liu*; Judge Klausner has made specific findings that each of them was properly served with a summons and failed to appear, disregarding both the summons and the order to show cause that followed; each is subject to a standing contempt order by which it already has incurred hundreds of thousands of dollars in sanctions; and their actions demonstrate that there is no barrier to their ability to appear in this Court to defend themselves against adverse claims that they decide are worthy of their efforts.

It is equally clear that application of the doctrine, in the form of dismissal of the claims of the claimant/defendants and entry of default against them, is a proper exercise of this Court's discretion. Claimant/defendants have not even attempted to justify their failure to appear in *Liu*; they have not argued that the civil forfeiture cases are not related to the criminal charges that have been brought against them in *Liu*, or attempted to articulate a good-faith basis for their decision simply to ignore Judge Klausner's orders. Instead, in an extraordinary display of arrogance, they have argued that they are "entitled" to defend against the civil forfeiture claims,

18

confident in the knowledge that, because they are corporate entities, the uncharged natural persons who are their masters are immune from arrest and detention. The situation presented here is precisely the one sought to be addressed by the enactment of § 2466. The government's motions to dismiss should be granted in their entirety.

### B. The Claims of Doubleday and Perfectus Are Also Properly Stricken Based on Their Corporate Status

Doubleday, which remains "FTB Forfeited," and Perfectus, which is now "SOS Suspended," are incapable of litigating in this Court. Doubleday argues in its opposition brief that its status does not prohibit it from proceeding with its defense against the government's forfeiture claims. While this issue is arguably academic in light of the discussion above, Doubleday's arguments in this regard are also wrong.[17]

Doubleday argues first that the disqualification that results from suspension or forfeiture by the Secretary of State does not apply to it because the forfeiture actions are based not on diversity jurisdiction, but upon a federal question. The authorities relied upon for this proposition do not compel that conclusion. The opinions in *Sierra Ass'n for Environment v. F.E.R.C.*, 744 F.2d 661 (9th Cir. 1984); *Comm. For Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814 (9th Cir. 1996); and *Southern California Darts Ass'n v. Zaffina*, 762 F.3d 921 (9th Cir. 2014) (which explicitly relies upon *Yost*) stand for the proposition that a suspended corporate *plaintiff* that is also an unincorporated association has standing to sue, despite its

---

[17] The government assumes that Perfectus, which appears to have redeemed its "FTB Suspended" status in mid-November only to fall into "SOS Suspended" status after filing its opposition papers, would present the same arguments as Doubleday. Production, which remained "FTB Forfeited" through November 27, 2019, made the same arguments as Doubleday in its opposition papers.

suspended corporate status.[18]  None of the claimant/defendants here is a plaintiff, nor has any claim to be eligible for such treatment, and it is clear from their own admissions that none of them can be considered an unincorporated association.

This Court need not address whether the California bar on litigation by suspended or forfeited corporate entities is "punitive," either in intention or application, as Doubleday suggests.  Doubleday states in its papers that the bar is "intended to motivate delinquent corporations to pay back taxes or file missing statements" (*see* Production DN 56 at 5, quoting *Cadle Co. v. World Wide Hospitality Furniture, Inc.*, 144 Cal. App. 4th 504, 512 (2006)), and that the "routine practice" is to "permit a short continuance to enable the suspended corporation to effect reinstatement."  *Id.* (quoting *Moofly Prods., LLC v. Favila*, 2013 WL 12114416 (C.D. Cal Nov. 25, 2013).

While the extraordinary ability of the claimant/defendants to resist efforts to motivate them are demonstrated most clearly by their utter disregard of the Contempt Orders, these arguments by Doubleday ignore the fact that three of the claimant/defendants were in suspended status in September, when the motions were filed, and this Court granted a requested continuance for the specific purpose of allowing them to effect reinstatement.  One of them (Perfectus) did so prior to November 22, but has since been suspended again.  While counsel for Doubleday is informed and believes that Doubleday is doing something to reverse the suspension of its capacity to act under California law, and Production appears to have succeeded in doing so, at least temporarily, there is no objective evidence that Doubleday has taken any affirmative steps to do so.

/ / /

---

[18]  In *J&J Sports Prod., Inc v. Humphries Enterprises, LLC*, 715 F. Supp. 2d 71 (D.D.C. 2010), the court concluded that the provision of the District of Columbia Code relied upon by the defendant did not bar the plaintiff's bringing of suit.  The government contends that California law is easily distinguished, for the reasons stated in the moving papers.

20

## IV.   CONCLUSION

For all of the reasons set out in the government moving papers and this reply, the government respectfully requests that this Court grant the government's motions, striking the claims of the claimant defendants and entering default against them.

DATED: November 29, 2019      NICOLA T. HANNA
                             United States Attorney
                             BRANDON D. FOX
                             Assistant United States Attorney
                             Chief, Criminal Division

                             _____/s/ Steven R. Welk_____
                             STEVEN R. WELK
                             Assistant United States Attorney
                             Chief, Asset Forfeiture Section

                             Attorneys for Plaintiff
                             UNITED STATES OF AMERICA

21