UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 18-1023 DMG (SPx)** | Date | March 22, 2023 |

| | | | |
|---|---|---|---|
| Title | *United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets, et al.* | Page | 1 of 9 |

Present: The Honorable    DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: [IN CHAMBERS] ORDER DENYING MOTION TO DISMISS [20]**

    In 2017, the Government seized the nearly 300,000 "bogus aluminum pallets" at issue in this civil forfeiture proceeding from shipping containers in the Port of Los Angeles and three warehouses in the Los Angeles area. The Government claims that the "pallets" are subject to forfeiture because they are in fact disguised aluminum extrusions (aluminum objects such as bars, tubes, or other parts), assembled as part of a scheme by Defendant Perfectus Aluminum, Inc. and its predecessor entities (collectively, "Perfectus"[1]) to avoid paying customs duties on certain aluminum extrusions imported from China. Accordingly, the Government seeks forfeiture under 18 U.S.C. § 981(a)(1)(C), which allows the forfeiture of property that constitutes or is derived from proceeds traceable to crimes such as smuggling goods into the United States and entry of goods by means of false statements.

    Perfectus now moves for dismissal of the action pursuant to Fed. R. Civ. P. 12(b)(6). MTD [Doc. # 20-1]. For the reasons discussed below, the MTD is **DENIED**.

## I.
## BACKGROUND

### A.   Allegations of the Complaint

    According to the Complaint, the United States International Trade Commission ("USITC") and the Department of Commerce ("DOC") are responsible for investigating "dumping" of imports—the importation and sale of goods in the domestic market for less than fair value—as well as efforts to avoid payment of duties imposed on imported goods that are subsidized by the exporting country. Complaint ¶ 19 [Doc. # 1]. Findings from these

---

[1] For purposes of this Order, the Court does not distinguish between Perfectus and the predecessor entities. Perfectus was allegedly formed in 2014 by Liu's son and through the merger of the predecessor entities. Complaint ¶ 14(a) [Doc. # 1].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 18-1023 DMG (SPx) | Date | March 22, 2023 |
| Title | *United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets, et al.* | Page | 2 of 9 |

investigations may cause DOC to issue "AD/CVD [anti-dumping/countervailing duties] orders" to level the playing field for domestic companies. Complaint ¶ 20.

In 2010, the USITC and DOC began investigating imports of aluminum extrusions from China. Complaint ¶ 21. They determined that Chinese producer/exporters of aluminum extrusions were selling the extrusions in the United States for less than fair market value, harming the domestic aluminum industry, and the Chinese government was unfairly subsidizing the producers/exporters. Complaint ¶ 21 n.6. On May 26, 2011, DOC issued two AD/CVD Orders, imposing import duties of up to 400% on certain aluminum extrusions. Complaint ¶ 21.

Until mid-2011, Perfectus imported aluminum extrusions, including, in 2009 and 2010, over $100 million of aluminum extrusions manufactured by China Zhongwang (one of the world's largest industrial aluminum manufacturers) or its affiliates. Complaint ¶¶ 9(a), 14(d). Zhongtian Liu, a Chinese national, is the founder, former chairman, and primary shareholder of China Zhongwang. Complaint ¶ 9(a). The duties imposed by the May 2011 AD/CVD orders directly targeted companies with which the predecessor entities did business and also targeted the Zhongwang Group for enhanced duties of 374.15%. Complaint ¶ 21 n.6.

In mid-2011, and allegedly as a scheme to avoid the increased duties that the AD/CVD Orders imposed, Perfectus stopped importing extrusions and started importing mass quantities of bogus pallets. These bogus pallets were, according to the Government, simply aluminum extrusions spot-welded together and were too heavy and expensive to be used or sold as pallets. Complaint ¶¶ 14(e), 24. Xiang Chun Shao, an officer and agent of Perfectus, instructed a broker to give false information about the "pallets" on customs forms, incorrectly describing them as "finished" goods. Complaint ¶ 26. Perfectus paid for the "pallets" with funds "loaned" from offshore entities that the Government believes were held by Liu and his close associates. Complaint ¶ 32. More than 2 million bogus pallets were allegedly imported and stockpiled in various warehouses,[2] so that the "pallets" could be melted and repurposed into aluminum products for sale in the United States. Complaint ¶¶ 14(e), 30. The Government estimates the avoidance of more than $1.5 billion in tariffs through this scheme. Complaint ¶ 28.

---

[2] The Complaint alleges that the "pallets" were delivered to and stockpiled in warehouses located in Irvine, Fontana, and Ontario, California and later some "pallets" were transferred to and stored in a warehouse located in Riverside, California. Complaint ¶ 33. These four warehouses are the subjects of separate civil forfeiture proceedings in this Court. *See United States v. Real Prop. Located at 2323 Main Street, Irvine, Cal.*, SD CV 17-01592 DMG (SPx); *United States v. Real Prop. Located at 10681 Prod. Ave., Fontana, Cal.*, SD 17-1872-DMG (SPx); *United States v. Real Prop. Located at 1001 S. Doubleday Ave., Ontario, Cal.*, SD 17-1873-DMG (SPx); *United States v. Real Prop. Located at 14600 Innovation Drive, Riverside, Cal.*, SD 17-1875-DMG (SPx).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 18-1023 DMG (SPx)** | Date | March 22, 2023 |
| Title | *United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets, et al.* | Page | 3 of 9 |

The scheme was frustrated in 2015, when a report alleged market fraud by Liu and China Zhongwang in the United States and China. Complaint ¶ 39. According to the Government's allegations, Liu then formed a new plan: to export the stockpiled "pallets" to Vietnam, where they would be melted down and reintroduced to the United States as Vietnamese aluminum (which was not subject to the AD/CVD Orders). Complaint ¶ 39. In May 2016, Perfectus accordingly hired a freight forwarding company to move the "pallets" to the Port of Los Angeles. Complaint ¶ 40.

The Government learned that the four Perfectus warehouses were being emptied and began surveillance in mid-September 2016. Complaint ¶ 41. On September 19, 2016, they inspected 22 cargo containers delivered to the Port, finding bogus pallets in 15 of the containers. Complaint ¶ 45. On January 9, 2017, they seized 549 shipping containers, determining that the contents (approximately 130,000 "pallets" that entered between April and September 2012) were bogus pallets imported into the United States with the intent to avoid increased customs duties. Complaint ¶ 50.

Meanwhile, in May and June 2017, Perfectus transferred "pallets" and other aluminum products to three new warehouses, in Walnut and the City of Industry, California, emptying the four warehouses where the "pallets" had previously been stored. *See* Complaint ¶¶ 55–57. In June 2017, DOC also issued a scope ruling in which it concluded that "certain aluminum extrusions from China made of Series 6 aluminum alloy, cut-to-length and welded together in the form of pallets, fell within the scope of the AD/CVD orders." Complaint ¶ 22. On September 14, 2017, the Government executed seizure warrants at the three Walnut and City of Industry warehouses, seizing the remainder of the "pallets" at issue in this case. Complaint ¶ 58

**B.   Procedural History**

In February 2018, the Government brought this action, relating to the seized "pallets," and Perfectus filed a claim. [*See* Doc. ## 10, 18.] The Court stayed this action on the parties' stipulation. [Doc. # 15.]

On May 7, 2019, a grand jury returned an indictment charging Liu, CZW, Perfectus, and others with various counts of conspiracy, customs and wire fraud, and money laundering. *See* Indictment, *United States v. Liu* [the "criminal proceedings"], CR 19-282-RGK (C.D. Cal. May 7, 2019) [Doc. # 1].[3] Perfectus was charged with conspiracy, wire fraud, customs fraud, and

---

[3] The Court takes judicial notice of filings in the related cases, including the criminal proceedings. *See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-1023 DMG (SPx)** | Date | March 22, 2023 |
|---|---|---|---|
| Title | *United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets, et al.* | Page | 4 of 9 |

international promotional money laundering. FAC ¶¶ 15–19. On September 23, 2021, the *Liu* jury returned a verdict finding Perfectus and companies that owned the four Perfectus warehouses guilty on all charged counts. [*See* Doc. # 276, *Liu*, CR 19-282-RGK (Aug. 23, 2021).]

At present, the matters remain stayed, and the parties ask that the Court continue the stays until there is a final judgment in the related criminal case, including exhaustion of any appeals, except that the parties seek a ruling on the MTD. [Doc. # 76 at 2.]

## II.
## DISCUSSION

### A. Applicable Law

In a civil forfeiture case, as in other civil cases, a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. A plaintiff need not provide detailed factual allegations but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. When ruling on a Rule 12(b)(6) motion, the Court must accept well-pled factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *See Autotel v. Nev. Bell. Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012).

In addition to the usual federal pleading standard, "*[i]n rem* forfeitures are conducted in accordance with the Supplemental Rules for Certain Admiralty and Maritime Claims [("the Supplemental Rules")]." *See United States v. Real Prop. at 2659 Roundhill Dr.*, 194 F.3d 1020, 1024 n. 3 (9th Cir. 1999). To state a claim, the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). The complaint "meets this low bar" when it "'state[s] the circumstances giving rise to the forfeiture claim with sufficient particularity that [the claimant] [can] commence[ ] a meaningful investigation of the facts and draft[ ] a responsive pleading' and 'permit[s] a reasonable belief for pleading purposes that [the property in question]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-1023 DMG (SPx)** | Date | March 22, 2023 |
|---|---|---|---|
| Title | *United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets, et al.* | Page | 5 of 9 |

. . . [is] subject to forfeiture.'" *United States v. Aguilar*, 782 F.3d 1101, 1108–09 (9th Cir. 2015) (quoting *United States v. Mondragon*, 313 F.3d 862, 866–67 (4th Cir. 2002)). A court may not dismiss a forfeiture complaint "on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

**B.    Falsity**

That the aluminum "pallets" were falsely described as such (that is, as finished goods, not extrusions) is relevant to whether the United States can show violations of 18 U.S.C. § 542 (criminalizing the entry of goods by means of false statements) and § 545 (smuggling goods by means of false or fraudulent documents or paper). Regarding the allegations of making false statements, Perfectus asserts that the Complaint fails to plausibly allege that the designation of the "pallets" as finished goods was improper. MTD at 18.

The Complaint alleges, however, that the bogus pallets "were largely tack-welded (or spot-welded), heavy, and made of expensive aluminum, making them impractical for real-world use and too expensive to be sold for use as pallets." Complaint ¶ 24. Customs and Border Protection's ("CBP") inspection of a sample "pallet" revealed that it was not a "finished product" because the pallet weighed more than three times as much as an "authentic aluminum pallet," was spot-welded, and did not appear to be designed for industrial use. Complaint ¶ 47. And the Complaint alleges that a predecessor entity continued to import the "pallets" notwithstanding "unsuccessful" efforts to market the "pallets"—instead, stockpiling the "pallets" without ever selling or leasing them. Complaint ¶ 31. These facts are adequate, taken in the light most favorable to the Government, to plausibly allege the falsity of representations that the "pallets" were finished goods. Perfectus' arguments to the contrary ignore the relevant standard.[4] *See, e.g.*, MTD at 19 (claiming that the Court should rely on Perfectus' export documentation identifying "aluminum pallets" and should ignore the reasonable inference that because a test "pallet" was not designed for industrial use, the other pallets were also not merchantable as such).

The Court construes the allegations in the light most favorable to the Government. Viewed in this light, the Complaint states a viable claim under Rule 12(b)(6) and alleges

---

[4] The Court denies the request to take judicial notice of Perfectus' filings in another action (*see* MTD at 19) because Perfectus improperly asks the Court to take judicial notice of contested facts in a court filing. *See* Fed. R. Evid. 201(b).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-1023 DMG (SPx)** | Date | March 22, 2023 |
|---|---|---|---|
| Title | *United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets, et al.* | Page | 6 of 9 |

sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial.[5]  *See* Fed. R. Civ. P. Supp. R. G(2)(f).

**C.    Due Process**

    **1.    Shapes Audit**

Perfectus argues that the Court should dismiss the Complaint for lack of due process and the Government's alleged previous conclusion that the pallets did not violate the AD/CVD Orders.  In support of this argument, Perfectus requests that the Court take judicial notice of a 2015 audit report in which CBP concluded that other aluminum pallets were not within the scope of the AD/CVD orders.  MTD at 11, 21–22.

The Court denies the request to take judicial notice of the 2015 audit report, which is attached to the MTD as Exhibit 1.  Shapes Report [Doc. # 20-3].  The report discusses imports by "Aluminum Shapes, LLC" between January 1 and September 30, 2014.  Shapes Report at 5.  There is no allegation in the Complaint that the Defendant Pallets were imported by Aluminum Shapes or were part of the audit.  *See* Complaint ¶ 11(e).  Rather, the Complaint's allegations about Aluminum Shapes are that Liu's son was in charge of the company in 2014 or 2015 and that the company was purchased "at least in part" in order to melt the "pallet" stockpile into aluminum billet.  Complaint ¶¶ 11(e), 16(d).  Whether the audit involved testing the same pallets seized in this matter is a disputed factual matter and, accordingly, the Court may not take judicial notice of the facts within the Shapes Report upon which Perfectus relies.  *See* Fed. R. Evid. 201(b).

    **2.    Delay in Seeking Forfeiture**

Perfectus argues that the delay in bringing this action is unreasonable and unjustified, so that the action should be dismissed.  MTD at 22.  When analyzing such an argument, the Court weighs the length of the delay, the reason for the delay, the defendant's assertion of its right, and

---

[5] Perfectus also argues in its reply brief that the Government has failed to plausibly allege that Perfectus acted with the requisite criminal intent, citing the heightened pleading standard for claims of fraud.  Reply at 7 [Doc. # 25]; *see* Fed. R. Civ. P. 9(b).  But the Government has pleaded the "who, what, when, where, and how" of the alleged fraudulent conduct and has done so specifically enough to "give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *See Vess v. Ciba-Geigy Corp, USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations omitted).  The allegations of fraudulent conduct are sufficiently particularized.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-1023 DMG (SPx) | Date | March 22, 2023 |
|---|---|---|---|
| Title | United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets, et al. | Page | 7 of 9 |

prejudice to the defendant. *See United States v. $8,850 in U.S. Currency*, 461 U.S. 555, 565 (1983).

Assertions of delay in the filing of a forfeiture complaint cannot usually be decided based on the length of the delay, standing alone. Here, the Complaint alleges the detention of pallets as early as September 2016, with the formal seizure of the Defendant pallets beginning in January 2017. *See* Complaint ¶¶ 46, 59. This action was brought in February 2018. *See id.* This delay is not *per se* unreasonable. *See United States v. $874,938.00 Currency*, 999 F.2d 1323, 1325 (9th Cir. 1993) (relying on cases holding that as much as a 19-month delay was not *per se* unreasonable). Thus, "[m]ore is needed to show prejudice, and [a] motion to dismiss is not the appropriate vehicle for the argument." *United States v. All Assets Held in Account Number XXXXXXX*, 83 F. Supp. 3d 360, 379 (D.D.C. 2015).

### 3. Scope Ruling Arguments

Perfectus' remaining arguments relate to DOC's 2017 scope ruling, which the Government alleges "determined that certain aluminum extrusions from China [including the Defendant pallets here] made of Series 6 aluminum alloy, cut-to-length and welded together in the form of pallets, fell within the scope of the AD/CVD Orders" that had been issued in 2011. *See* Complaint ¶ 22. The Court grants the unopposed request to take judicial notice of the scope ruling. *See* Opp. at 11 n.10.

#### a. AD/CVD Proceedings

The Court begins by briefly summarizing the relevant regulatory procedure.

After issuing an antidumping order, and upon an interested party's application, DOC may issue a "scope ruling" that clarifies the scope of the order with respect to particular products. *See* 19 C.F.R. § 351.225(a), (c)(1). The scope ruling may also be accompanied by a "scope inquiry"—"a broader inquiry as to whether a product is included within the scope of an antidumping duty order." *United Steel & Fasteners, Inc. v. United States*, 947 F.3d 794, 799 (Fed. Cir. 2020). "DOC's decision to initiate a scope inquiry turns on whether it can render a scope ruling based solely upon a party's application for a scope ruling and the descriptions of the subject merchandise referred to in [19 C.F.R.] § 351.225(k)(1)." *Id.*

Whether a scope inquiry accompanies a scope ruling has significant ramifications for the effect of the scope ruling. Once a scope inquiry has been initiated, DOC may "retroactively

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 18-1023 DMG (SPx)** | Date | March 22, 2023 |
|---|---|---|---|
| Title | *United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets, et al.* | Page | 8 of 9 |

suspend liquidation[6] for all unliquidated entries entered on or after the initiation date of the scope inquiry." *Id.* (citing 19 C.F.R. § 351.225(1)(3)). But if a scope ruling is unaccompanied by a scope inquiry, DOC cannot retroactively suspend liquidation. *See id.* at 801.

An interested party has the right to commence an action in the Court of International Trade within 30 days of the date of mailing of a determination "as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order." 19 U.S.C. §§ 1516a(a)(2)(A)(ii), 1516a(a)(2)(B)(vi).

### b. Retroactivity of the Scope Ruling

Perfectus asserts that the Government impermissibly applied the 2017 scope ruling by "retroactively" imposing duties on pallets imported before March 2017, when the scope inquiry occurred. *See* MTD at 15, 17 n.5; *see also United Steel & Fasteners, Inc. v. United States*, 203 F. Supp. 3d 1235 (Ct. Int'l Trade 2017). This argument is not persuasive.

At issue here is a civil forfeiture of property—not CBP's assessment of duties on "pallets" imported before 2017. Another judge in this District has rejected a similar argument. *See United States v. Vandewater Int'l Inc.*, No. 2:17-CV-04393-RGK-KS, 2020 WL 4372115, at *7–*8 (C.D. Cal. June 23, 2020). As the *Vandewater* Court recognized, "liquidation does not foreclose other remedies to collect unpaid duties," for instance, "civil penalties for misconduct under 19 U.S.C. § 1592." *Id.* (citing authorities). Although *Vandewater* involved claims under the False Claims Act, the Court agrees with this reasoning in the context of a civil forfeiture suit. Moreover, although the Complaint references the 2017 scope ruling, the Government does not base its allegations on the scope ruling but instead has included detailed, plausible allegations of false statements on customs forms—allegations that the Court must take as true when ruling on the MTD. Doing so does not amount to a retroactive application of the scope ruling.

### c. Failure to Serve 2017 Scope Ruling

Perfectus next argues that due process bars the Government from proceeding with this action because the Government failed to serve the 2017 scope ruling on Perfectus until March 2018, preventing Perfectus from seeking review of the scope ruling until now. MTD at 21. This

---

[6] Liquidation is "the final computation or ascertainment of duties on entries" on merchandise. 19 C.F.R. § 159.1. CBP typically must liquidate merchandise within one year of entry. 19 C.F.R. §§ 159.2, 159.11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 18-1023 DMG (SPx) | Date | March 22, 2023 |
|---|---|---|---|
| Title | *United States v. Approximately 279,808 Aluminum Structures in the Shape of Pallets, et al.* | Page | 9 of 9 |

argument relies on facts outside the allegations of the Complaint and the matters of which the Court may take judicial notice. Accordingly, the Court denies the MTD in this regard.

### III.
### CONCLUSION

The motion to dismiss [Doc. # 20] is **DENIED**. The parties shall file a joint status report within **ten** days of this Order apprising the Court of the status of this matter and whether it should remain stayed.

**IT IS SO ORDERED**.